Kimball *v.* Grafton Bank.

## KIMBALL *v.* GRAFTON BANK.

An order of the Superior Court, directing judgment, in an action transferred from the Court of Common Pleas, to be entered as of a preceding term, may be amended so as to authorize the judgment to be entered as of a more recent term, to conform with the record of the court below.

A petition in the nature of a bill in equity will be dismissed if the relief sought be upon grounds purely technical, and the party have a remedy at law.

*It seems* that an officer, who has seized property on an execution in favor of a corporation, should proceed with the service of the writ, though the corporation expire after such seizure.

PETITION, stating that an action in favor of the president, directors and company of the Grafton Bank, against

the petitioners, Kimball, Morse and Haywood, was pending in the Court of Common Pleas at the April term, 1848, in which certain questions arising upon a statement of facts submitted by the parties, were at that time referred to the Superior Court, and the action continued in the court below from term to term, until the April term, 1849, when the determination of the Superior Court upon the questions assigned not having been certified, the action was further continued *nisi.* After the adjournment of the Court of Common Pleas without day, an order was received by the clerk from this court, to the following effect :

" Superior Court of Judicature, Fifth Judicial District, Grafton ss., January term, 1849.    President, Directors & Co. of the Grafton Bank *v.* Dudley C. Kimball & al. In this action, pending in the above named court, and continued *nisi*, it is adjudged by the court that the plaintiffs are entitled to recover of the defendants the sum of one hundred and seven dollars and thirty-seven cents, as of the April term, 1848, of the Court of Common Pleas for the Western Judicial District, in the county aforesaid, and the clerk of the Superior Court is directed to make an entry accordingly. .

JOHN JAMES GILCHRIST.

" To J. D. Sleeper, Esq., Clerk of the Superior Court, Haverhill, N. H.

" June 30, 1849."

The clerk of the Court of Common Pleas thereupon entered up judgment upon the records of that court, as of the April term, 1849, in favor of the bank against these petitioners, for one hundred and thirteen dollars and eighty-one cents damages, and costs, which were taxed at fifty-five dollars and thirteen cents, upon which execution for those sums was issued on the seventh day of July, 1849, and placed in the hands of the sheriff of the county, who, on the same day, seized the goods of Kimball, and

advertised them to be sold on the twelfth, to satisfy the judgment, but adjourned the sale to a future day. On the tenth day of July, 1849, the corporate existence of the president, directors and company- of the Grafton Bank expired by the terms of their charter.

The petitioners, therefore, suggesting that, by reason of the extinction of the corporation, the judgment has become void and ineffectual, and that the same was irregularly entered as of the April term, 1849, instead of April term, 1848, and for a larger sum than was ordered by the Superior Court, pray for an injunction of this court against further proceedings under the execution.

It appeared that the action had been entered at the February term of the Court of Common Pleas, in 1846, and questions transferred to this court, which resulted in a general judgment for the plaintiffs at the April term, 1848, when the parties entered into an agreement in the following terms: "It is agreed that the question what damages the bank shall recover of the defendants shall be assigned and transferred to the Superior Court for determination," and an order of court was made accordingly.

The questions so coming up were considered by the court, and determined according to the certificate and order recited in the petition. The sum of $113.81, for which judgment was entered, was obtained by adding to $107.37, named in the order, $6.44, the interest on the latter sum from April, 1848, to April, 1849. It further appeared that on the 9th of July, 1849, the Grafton Bank, by James Bell, their agent, transferred and assigned all their property to trustees for the benefit of the creditors of the bank, and, after paying debts and expenses, for distribution among the stockholders.

*Felton,* for the petitioners.

*Morrison,* for the defendant.

GILCHRIST, C. J.    If we waive, for the present, the objections taken by the petitioners to the judgment of the Court of Common Pleas, and assume that it was regularly entered as of the April term of that court, in 1849, and for the proper sums in damages and costs, it will appear that a valid execution was outstanding against them on the seventh day of July, and in the hands of the officer whose duty it was to serve it; that on the same day he made a lawful seizure of the chattels of one of the judgment debtors, who was, without any doubt that has been suggested, bound to pay the same; that on the day but one following, the Grafton Bank assigned that judgment to trustees for the benefit of its creditors, and upon the satisfaction of their claims, for distribution among the stockholders, who would, without any express provision in their favor, have been entitled to such contingent residue of the funds of the corporation, upon the termination of its corporate existence.    Upon the tenth of July, the day next following this assignment, happened an event which caused this petition to be brought, and upon which the petitioners rely as a sufficient and proper ground for the interposition of the equitable powers of this court: namely, the termination of the corporate existence of the bank by the limitation of its charter.    They say that further proceedings under the execution would work injustice and wrong to them, because there is no legal judgment creditor to whom the money is due.

It is not suggested that, through any fraud or collusion, the money, if collected, is in danger of passing into hands not equitably entitled to it; that other parties than those named in the assignment of July 9 are in a position to avail themselves of the judgment; or that the assignment itself was made for improper purposes, or is in any respect inequitable; or that there is a probability, from any cause, that the petitioners may be required to pay the debt again, after it shall have been once satisfied by the process now

pending. Indeed, we may perhaps consider ourselves left to presume the contrary of all such surmises. The assignment appears to have been made for a proper purpose, and the equitable right of the trustees to receive and recover of the sheriff the money in his hands, when collected, appears to be one which the court might protect.

In *Folger* v. *Chase*, 18 Pick. 66, a bank indorsed the notes in suit, and it was held that the indorsee might maintain an action on them after the expiration of the charter, and that the defendants had no right to inquire for whose benefit the suit was brought.

And in *Bank of Alexandria* v. *Patton*, 1 Rob. (Virg.) 524, it was held that the rights of assignees, under an assignment made before the expiration of the charter, would not be impaired by that event.

The ground, therefore, upon which our interference is claimed, is the strictly technical one that the sheriff cannot legally proceed, for the want of a judgment creditor to keep alive the judgment and execution.

As to this, it is clear that upon the expiration of the charter all the rights of the corporation to appear in court, whether as plaintiff or defendant, expire likewise. *Fox* v. *Horah*, 1 N. Car. Eq. 358; *Ryder* v. *Union Co.*, 7 Leigh 154.

But it was held, in *Lindell* v. *Benton*, 6 Mo. 361, although neither reason nor authorities are given, that an execution having issued while the bank had a legal existence, the property attached may be holden after the charter has expired.

In the analogous case of the death of a judgment creditor, after goods have been seized on execution, it is held that the execution does not abate, but that the sheriff must go on to execute the writ. 1 Sellon's Practice 561. The case of *Clark* v. *Withers*, 1 Salk. 323, and much more fully reported in 6 Mod. 290, and referred to by Sellon, was where an administrator had recovered judgment, and de-

livered his execution to the sheriff, who seized sufficient goods. The administrator soon after died, and Clark, the debtor, sought to recover his goods. It was insisted for the plaintiff that the execution was abated, and nobody could perfect it. Not the executor, for he was an *auter droit;* nor the administrator *de bonis non,* for he was paramount and not in privity; the statute of 17 Car. II., c. 3, not enabling administrators *de bonis non* to succeed the administrator in cases like this. But it was held that the plaintiff could not recover, because it was the duty of the sheriff to proceed with the service of his writ, and that the money would belong to the administrator *de bonis non,* when collected.

These authorities are worthy of being considered as bearing upon the question relating to the powers and duties of the sheriff in this case; as to which, however, we do not deem it necessary to give an opinion; for if the law were otherwise, we do not consider the case a proper one for the equitable consideration or interposition of the court. The injury that may result from the proceedings of the officer under the execution, if they be such as are described by the petitioners, are still not irreparable. They are susceptible of perfect pecuniary satisfaction, which may be obtained by the proper proceedings in the due course of law. 1 Story's Eq. 32; 3 Danl. Ch. Pr. 1854, and cases in note. If a case depends upon a mere legal question, it must be determined in a court of law. *Attorney General* v. *Utica Ins. Co.,* 2 Johns. Ch. 375.

With respect to the regularity of the proceedings in entering the judgment in the Court of Common Pleas, the question as to the quantum of damages having been referred to this court by an order of the Court of Common Pleas, pursuant to the statute authorizing such question to be transferred, a computation appears to have been made as for the April term of that court, in 1848, when the order of transfer was made. Perhaps the true meaning of the

order of the Superior Court would be to require judgment to be entered as of that term, and that the entry of the judgment at the subsequent term, although for the same sum, with the addition of interest, may have been owing to a misconstruction of the order. Should the parties so incline to consider it, and that the interests of any of them require the order to be amended, the court would listen to an application for that purpose; in which event the petition for the injunction would be dismissed, and the temporary injunction dissolved.

*Decree accordingly.*